## ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of MARY E. WINANS, deceased.

**[Decided March 5th, 1926.]**

Accounting—Executor—Exceptions—Failure to Charge Account
With $20,000 Claimed by Executor as a Gift to Him From
Testatrix—Testatrix About Ninety Years Old—Circumstances
Considered, and Held That Alleged Donor Did Not Have
Benefit of Independent Advice and That Donee Has Not
Sustained the Burden of Proof to Show Absence of Undue
Influence—Duty of Persons so Situated to Show, Beside Ab-
sence of Undue Influence and Deception, That All was Fair,
Open, Voluntary and That it was Well Understood.

On exceptions to accounting.

*Mr. John Trier,* for the accountant.

*Mr. Arthur B. Seymour,* for the exceptant.

CAFFREY, J.

Arthur W. Snow, executor under the last will and testa-
ment of Mary E. Winans, deceased, has filed an account of
his administration of the testatrix's estate, to which account
exceptions have been made, alleging that the said executor
has not charged himself with the sum of $25,000 in moneys
and securities delivered to him by Mrs. Winans in her life-
time. There is no denial on the part of the executor that
he did not include as part of the assets of the estate the sum
of $20,000, claiming it as his own by way of a gift from the
testatrix during her lifetime.

The validity of the gift is attacked on three grounds—
(1) that the donor lacked mental capacity sufficient to make
the gift; (2) that the transfer of the money was not full
nor was dominion over it complete, and, therefore, not a
valid gift *inter vivos;* (3) that the donor did not have the

benefit of independent advice, and that she was the subject of undue influence.

The evidence showed that the testatrix died on August 15th, 1922, aged eighty-nine or ninety years; that prior to April of that year she lived in Caldwell, New Jersey, and managed her own business affairs with the occasional aid of Mr. Charles J. Thorne, a friend. This consisted of the receipt of interest on money invested in various savings banks, the return from stock in the Swift Company and the preparation of her income tax reports. The total estate was, approxiimately, $45,000. The proofs further show that in May, 1922, after Mrs. Winans was removed from Caldwell to East Orange, Mr. Snow, who had prior to this time visited the testatrix not more than three or four times a year, took a marked interest in her affairs, calling at her home in company with his sister, Mrs. Mary G. Grasshof, many times. Mrs. Grasshof also manifested an interest in Mrs. Winans. There was an immediate response to this sudden solicitation on the part of Mr. Snow and Mrs. Grasshof, and, in one month's time, Mrs. Winans, according to the testimony, requested that Mr. Snow take charge of her entire estate, which he agreed to do. During this period, or, to be exact, on May 17th, 1922, Mrs. Winans made her will and designated Mr. Snow her executor, and, also, a beneficiary to the extent of $5,000, which, according to Mrs. Grasshof, was in recognition of Mr. Snow's kindness to Mrs. Winans' brother Robert, who was the father of Mrs. Snow. This transaction was carried on through the agency of Mrs. Grasshof, who testified that she made notes from the dictation of Mrs. Winans, and later Mr. Frederick Hey, a lawyer, drew the will in keeping with the desires of the testatrix. Mr. Snow testified that he learned of the existence of the will through Mrs. Grasshof, but she did not make mention of the legacy to him, a statement viewed in the light of all the circumstances, that seems incredible. Mrs. Grasshof further testified that it was the intention of the deceased to give Mr. Snow $25,000 as a legacy, but decided to make a gift to him during her lifetime instead. The evidence fur-

ther shows that beginning in May, when Mr. Snow assumed entire charge of the affairs of Mrs. Winans, to about the middle of July, and, approximately, one month before the death of the testatrix, she withdrew $35,982.54, almost her entire estate, in moneys from the various banks and turned it over to Mr. Snow, which he placed in his own account, co-mingled with his own funds, and, while there is some conflict in the testimony as to his presence at these withdrawals, there is no doubt as to Mrs. Grasshof's participation and guidance. Of this amount $15,418.95 was invested for the benefit of Mrs. Winans. The balance $20,000, was kept and used by Mr. Snow as his own money as a gift from the testatrix. Mr. Snow testified that he learned of this gift which he so utilized from Mrs. Grasshof; that he went to see the testatrix and told her that he was reluctant to take it; that he felt the deceased would not have enough to take care of herself. Mr. Snow further testified that Mrs. Grasshof came to him with the paper marked in evidence *Exhibit 13*—

"Dear Arthur: I give you twenty thousand dollars for your service to me and faithful attention to my brother, Brother Robert, Robert Winans. Mary E. Winans, May, Mary."——

(Further writing unintelligible.)

There is no date on the exhibit, but the proof indicates it was signed the early part of June. This note seemed to satisfy Mr. Snow, and, despite his position as vice-president of a bank and his forty-three years' experience in banking, he accepted this money as his own without any regard to his obligation as a fiduciary and one having the utmost confidence of a woman almost ninety years of age, weakened by a disease which caused her death but a short time after his acceptance.

Coming now to the specific objections raised by the exceptions, I do not feel that the proof is sufficient to hold that the deceased lack mental capacity to make the gift, and, while there is some suggestion in the evidence supporting the contention that Mrs. Winans would receive the interest

on the $20,000 during her lifetime, I feel this is not inconsistent with the claim that the gift was absolute in character. There is no doubt in my mind, however, that Mrs. Winans was under the complete influence of Mrs. Grasshof, who, in turn, exercised that dominance on behalf of Mr. Snow. From April, when Mrs. Winans was removed to East Orange, to the date of her death in August, there is not a syllable of evidence showing that the decedent had the benefit of any independent or competent advice touching upon her affairs. Mr. Thorne, who up to the month of April, 1922, had been comewhat of an advisor, and in whom Mrs. Winans had confidence, was no longer consulted. In his stead Mrs. Grasshof assumed absolute control. She was ever present, and the withdrawal of the savings accounts, the making of the will and the transfer of the entire estate to Mr. Snow, are striking examples of her complete administration, and, furthermore, the promptness with which she obtained *Exhibit 13* from Mrs. Winans, when Mr. Snow showed some reluctance in accepting the $20,000, indicates an eagerness and intensity of purpose that savors of undue influence, if not coercion.

The legality of the gift, under the circumstances as disclosed in this case, has been passed upon in many cases, and the rule applicable is no better expressed than by *Slack et al.* v. *Rees, 66 N. J. Eq. 447,* where a gift made by a father of advanced years and in infirm health to a daughter furnishing him care and service was set aside.

Chief-Justice Gummere, speaking for the court of errors and appeals, said the conveyance must be set aside, because in making it the donor did not have the benefit of competent and independent advice, and, quoting from *Hall* v. *Otterson, 52 N. J. Eq. 528,* said: "In all transactions between parties occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed, and who has acquired an advantage, to show affirmatively, not only that no deception was practiced therein, no

undue influence used, and that all was fair, open and voluntary, *but that it was well understood."* "Where parties hold positions in which one is more or less dependent upon the other, courts of equity hold that the weaker party must be protected, and they set aside his gifts, if he had not proper advice, independently of the other." *Haydock* v. *Haydock, 7 Stew. Eq. 575.* "The rule to be gathered from the English and American cases is that the burden of proof is cast upon the donee to establish that the donor fully appreciated what he was doing, or, at all events, in the doing had the benefit of disinterested and competent advice." *Coffey* v. *Sullivan, 18 Dick. Ch. Rep. 302.* The court further pointed out that "its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interest, he may only partially understand or appreciate."

Vice-Chancellor Green, in *Hall* v. *Otterson, supra,* quoting from *Rhodes* v. *Bate, L. R. 1 Ch. App. 252* (at *p. 257*), said: "I take it to be a well-established principle of this court that persons standing in a confidential relation toward others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show, to the satisfaction of the court, that the person by whom the benefits have been conferred had competent and independent advice in conferring them. This, in my opinion, is a settled general principle of the court, and I do not think that either the age or the capacity of the person conferring the benefit, or the nature of the benefit conferred, affects this principle." Judge Kekewich, in *Allcard* v. *Skinner, 36 Ch. Div. 145* (at *p. 158*), says: "Where the paramount influence presumably exists, it [the law] casts on the possessor of such influence the burden of proving that the gift was free, and it holds an essential part of that proof to be that the donor had 'competent independent advice,'" and Lord-Justice Lindley (at *p. 181*) : "In this

class of cases it has been considered necessary to show that the donor had independent advice and was removed from the influence of the donee when the gift to him was made." See, also, *Prideaux* v. *Lonsdale, 1 De G., J. & S. 433; Savery* v. *King, 5 H. L. Cas. 627; In re Garnett, 31 Ch. Div. 1; Dolliver* v. *Dolliver, 94 Cal. 642; Leech* v. *Fare,* cited in *13 Am. L. Reg. (N. S.) 350.*

Mr. Justice Garrison defines independent advice in this language: "Proper independent advice in this connection means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was, not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interest of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself of his proposed benefaction." *Post* v. *Hagan, 71 N. J. Eq. 243.*

From a careful reading of the testimony it is manifest that Mrs. Winans had not the benefit of independent advice with regard to this donation of $20,000 claimed by Mr. Snow as his own, and, furthermore, the donee has not sustained the burden of proof cast upon him to show absence of undue influence. For these reasons the exceptions are sustained. And Arthur W. Snow is directed to account to the estate for the money claimed as a gift to himself.